IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH R. HETRICK, an individual, and<br>RALPH R. HETRICK, SHERA M.<br>HETRICK t/d/b/a HETRICK'S AUTO<br>EQUIPMENT,<br><br>    Plaintiffs,<br><br>  v.<br><br>ADVANCE AUTO PARTS, a<br>corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 02-1386<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

August 8th, 2005

## I.  INTRODUCTION

Ralph R. Hetrick ("Hetrick") and Ralph R. Hetrick and Shera M. Hetrick t/d/b/a Hetrick's Auto Equipment ("Hetrick's Auto")(collectively "Plaintiffs"), filed a five (5) count amended complaint alleging: (1) breach of contract; (2) promissory estoppel; (3) fraudulent inducement; (4) intentional misrepresentation; and (5) punitive damages. Defendant, Advance Auto Parts ("Advance"), filed a motion for summary judgment seeking the dismissal of all five (5) counts. Plaintiffs have responded and the motion is before the Court.

## II.  STATEMENT OF THE CASE

Prior to October 1, 2001, the Hetricks were owners and operators of an automobile parts business, Hetrick's Auto, in Punxsutawney, Pennsylvania. Stipulation, ¶ III (b). Advance operates more than 2400 automobile parts stores, one of which is located in Punxsutawney, Pennsylvania. Stipulation, ¶¶ III (f) and (g). In June of 2001, Hetrick contacted Advanced about a job by answering a blind advertisement in the local newspaper. Stipulation, ¶ III (j). Hetrick then had several conversations with Walter Smith ("Smith"), a Regional Recruiter for Advance, and David Sinisi ("Sinisi"), a Division Manager for Advance, regarding potential employment with Advance. Stipulation, ¶¶ III (h), (i) and (k). At the time Advance was seeking candidates

for a store manager position for its Altoona store. Stipulation, ¶ III (k).  When Hetrick became aware that he was not guaranteed to be placed in Advance's Punxsutawney store, he told Advance that he was not interested in the manager's position. Stipulation, ¶ III (l).

In or around early September of 2001, Smith called Hetrick to inquire if he would be interested in a position as a "Parts Pro[1]" at the Punxsutawney store.  Stipulation, ¶ III (m).  After discussions with Smith and Sinisi, Hetrick decided to accept the position at an hourly wage that would allow him to make around $31,000 per year.  Hetrick Deposition, pp. 111-129.  There was no written employment contract entered into between Advance and Hetrick.  Stipulation, ¶ III (o).  Hetrick admits that there were no discussions with Advance regarding any specific period of employment.  Hetrick Deposition, pp. 155-157.

The Hetricks continued to operate Hetrick Auto until September 29, 2001.  Stipulation, ¶ III (p).  During his last week in business, Hetrick informed his customers that he was closing Hetrick's Auto and going to work for Advance effective October 1, 2001.  Hetrick also placed a sign in the store window that he could be reached at Advance.  Stipulation, ¶ III (q).  Hetrick began working as the Parts Pro for Advance in the Punxsutawny store on October 1, 2001.  Stipulation, ¶ III (s).  Further, beginning on October 1, 2001, arrangements were made to have the business telephone calls to Hetrick Auto forwarded to Advance.  Stipulation, ¶ III (r).

Upon commencement of his employment with Advance, Hetrick completed an Apllication for Employment which contained an acknowledgment that his employment at Advance was at-will:

> I . . . understand that if hired I may resign for any reason and that Advance Auto Parts can likewise terminate my employment, at any time, with or without cause. . .
>
> I understand that no representative of Advance Auto Parts has the authority to enter into any employment agreement contrary to the foregoing.

Hetrick Deposition, pp. 186-187; Hetrick Deposition Ex. 1.  In addition, Hetrick received, and

---

[1]     The "Parts Pro" is primarily responsible for sales to commercial customers such as local repair shops and garages.  Stipulation, ¶ III (m).

signed a receipt for a copy of the Advance Auto Parts' Employee Handbook. The receipt, in relevant part, stated:

> I further understand that the Employee Handbook does not change my status as an employee-at-will, that my employment is for no definite period of time, that I am free to leave my Employment with Advance Auto Parts at any time, and for any reason, and that Advance Auto Parts may terminate my employment at any time, with or without cause and with or without notice. I understand that nothing in any of Advance Auto Parts' written policies, handbooks or other documents should be construed as creating any contractual obligations on the part of Advanced Auto Parts . . .
>
> I acknowledge that no one at Advance Auto Parts is authorized to make any contract of employment with any employee unless the document is in writing and signed by the President of Advance Auto Parts.

Hetrick Deposition, p. 194; Hetrick Deposition Ex. 2. Hetrick reviewed both the Application for Employment and the Employee Handbook acknowledgment before signing them. Hetrick Deposition, pp. 194, 197.

Commercial sales for Advance's Punxsutawney store decreased from an average of $2327.38 per week prior to Hetrick's employment to $2015.99 per week during Hetrick's first thirty (30) days of employment. Stipulation, ¶ III (u). On October 27, 2001, Sinisi met with Hetrick and presented him with an expectations letter informing Hetrick that he had thirty (30) days to increase commercial sales at Advance's Punxsutawney store to $4,000.00 per week. Stipulation, ¶ III (v). Hetrick was unable to meet the commercial sales goal of $4,000.00 per week, and Advance terminated his employment on November 27, 2001.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court

is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Plaintiffs' Claim for Breach of Contract

It is well-settled in Pennsylvania that a contract of employment that does not specify a definite duration of employment is presumed to be terminable at the will of either party. *See, e.g., Geary v. United States Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974); *Scullion v. Emeco Indus., Inc.*, 580 A.2d 1356, 1358 (Pa. Super. 1990); *McWilliams v. AT&T Information Systems, Inc.*, 728 F. Supp. 1186, 1194 (W.D. Pa. 1990). If the employment is at will, an employer may discharge an employee for any reason or for no reason at all. *Scott v. Extracorporeal, Inc.*, 545 A.2d 334, 336 (Pa. Super. 1988). In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception. *Luteran v. Loral Fairchild Corp.,* 688 A.2d 211, 214 (Pa. Super. 1997) *alloc. denied*, 701 A.2d 578 (Pa.

-4-

1997).

### Agreement for a Definite Duration

To overcome the presumption of employment at-will, an employee must submit clear and precise evidence that establishes a specific term of employment. *See, e.g., Murray v. Commercial Union Ins. Co.*, 782 F.2d. 432, 435 (3d Cir. 1986); *Adams v. Budd Co.*, 583 F. Supp. 711, 714 (E.D. Pa. 1984); *Muscarella v. Milton Shoe Mfg. Co., Inc.*, 507 A.2d 430, 432 (Pa. Super. 1986)("[A] specific 'length of time' is an essential element of any contract of employment, without which no cause of action will lie"). Evidence of a subjective expectation of a guaranteed employment period, based on employer practices or vague employer superlatives, is insufficient. *See Adams*, 583 F. Supp. at 713-14; *Ross v. Montour R.R. Co.*, 516 A.2d 29, 32 (Pa. Super. 1986).

Hetrick argues that he and certain agents of Advance discussed a term of employment to cover a period of time extending to Hetrick's normal retirement age. Not only is there not clear and precise evidence backing Hetrick's contention, but such term of employment fails as indefinite. Courts have found evidence that employers offered a "permanent job," "life-long employment," or work on a "long term project" to be insufficient to overcome the presumption of at-will employment. *Scott v. Extracorporeal, Inc.*, 545 A.2d at 337. Further, assurances of employment for "as long as I wanted and they wanted me and I was satisfactory to them" were found to be too vague to create employment for a term[2]. *Murray v. Commercial Union Ins. Co.*, 782 F.2d at 435. More specific to the instant action, the Pennsylvania Superior Court has stated that '[r]eliance on the bare supposition that the position was expected to last until retirement does not establish a specific term of employment . . . .such vague and conclusory statements are not

---

[2]      Pennsylvania courts have been reluctant to enforce similar employment contracts. *See Marsh v. Boyle*, 530 A.2d 491 (Pa. Super. 1987) (employer's assurances that employee would be working "for at least two years" not sufficiently definite to overcome the at-will presumption); *see also Berda v. CBS, Inc.*, 800 F. Supp. 1272, 1279 (W.D. Pa. 1992), *aff'd*, 975 F.2d 1548 (3d Cir. 1992) *cert. denied sub nom.* 493 U.S. 1062 (1990)(indefinite assurances in response to employee's concerns about job security, that employee did not follow up on, cannot be construed as an offer of fixed term employment).

sufficient to overcome the presumption of employment at will." *Darlington v. General Electric*, 504 A.2d 306, 313 (Pa. Super. 1986).

Hetrick is unable to direct this Court to any evidence that clearly establishes a definite term of his employment. In fact, in his deposition Hetrick admitted that no one at Advance ever mentioned a specific duration of employment. *See* Hetrick Deposition, p. 156. Without a definite duration of employment, Hetrick is unable to overcome the presumption of at-will employment. Moreover, there is affirmative evidence in the form of the employment application and the acknowledgment of receipt of the Employee Handbook that Hetrick understood his employment was at-will.

Similarly, the Court can find no evidence in the record that would establish either an agreement specifying that the employee will be discharged only for just cause, or an applicable recognized public policy exception.

Sufficient Additional Consideration

In Pennsylvania, an employee can defeat the presumption of at-will employment by establishing that an employee gave the employer additional consideration other than the services for which he or she was hired. *See Scullion v. Emeco Indus., Inc.*, 580 A.2d 1356, 1358 (Pa. Super. 1990); *Marsh v. Boyle*, 530 A.2d at 493. Additional consideration occurs when "the employee bestows a legally sufficient benefit or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired." *Scott v. Extracorporeal, Inc.*, 545 A.2d at 336. When additional consideration is present, a court may infer that the parties intended to overcome the at-will presumption. *Id.*

Hetrick argues that Advance specifically bargained for additional consideration in the form of Hetrick closing his competing business in exchange for employment with Advance at a specific location and at a rate of pay higher than the normal rate for the position. Hetrick further contends that this consideration was a detriment to him and a benefit to Advance well beyond the services Hetrick was to provide in his capacity as the Parts Pro.

Whether the additional consideration furnished by the employee is sufficient to rebut the

-6-

at-will presumption is a question of fact. *Scullion v. Emeco Indus., Inc.*, 580 A.2d at 1358. In *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1198 (Pa. Super. 1987), the Pennsylvania Superior Court stated that "[t]he court must allow the jury to consider [the employee's] alleged 'additional consideration' as well as all the circumstances surrounding the agreement. A jury might reasonably interpret the . . . facts so as to conclude that [the employee] has clearly rebutted the at-will presumption." *Id.*, 526 A.2d at 1202. When the evidence is so clear, however, that no reasonable person could determine the issue any way but one, the court can take the matter away from the jury. *Id.* at 312; *see also Martin v. Safeguard Scientifics*, 17 F. Supp. 2d 357, 369 (E.D. Pa. 1998).

Further, the additional consideration rule can be rebutted by evidence that the parties specifically contracted for employment at-will. *See Darlington v. General Electric*, 504 A.2d at 314. Obviously, the problem with Hetrick's contention is the fact that he signed two documents that prominently stated that he was an at-will employee. Therefore, even if the Court were to find additional consideration[3], Hetrick's express acknowledgments of at-will employment makes it incumbent upon this Court to find that the employment relationship between the parties was at-will. *See Sharp v. BI/IP Int'l, Inc.*, 991 F. Supp. 451, 458 (E. D. Pa. 1998); *Darlington v. General Electric*, 504 A.2d at 314 ("If the parties specifically agreed that the employment would be at-will, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will").

Therefore, the Court must construe the employment agreement according to the stated intentions of both Hetrick and Advance that the employment be at-will. Plaintiffs' claim for breach of the employment contract fails as a matter of law.

B.     Promissory Estoppel

Plaintiffs' claim for promissory estoppel also fails as a matter of law. The doctrine of

---

[3]     Moreover, the Court is not convinced that the closing of Hetrick's business was in fact a detriment. Hetrick was actively seeking employment, and once he became involved with Advance, a competing auto parts retailer, Hetrick certainly was aware that if he agreed to employment with Advance, his own business would represent a conflict that could not remain.

promissory estoppel is only employed to enforce a promise where there has been no consideration. *Cardamone v. University of Pittsburgh*, 384 A.2d 1228, 1232 n.4 (Pa. Super. 1978) (en banc). The doctrine requires that:

> (1) the promisor must make a promise that he should reasonably expect to induce action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise.

*Holewinski v. Children's Hosp.*, 649 A.2d 712, 714 (Pa. Super. 1994) *quoting Cardamone v. University of Pittsburgh*, 384 A.2d at 1233. Plaintiffs have failed to proved that there was a promise in this instance, so the doctrine can not apply. More importantly, Pennsylvania Supreme Court has held that promissory estoppel is not an exception to the employment at-will doctrine. *See Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335-36 (Pa. 1995); *Paul v. Lankenau Hosp.*, 569 A.2d 346, 348 (Pa. 1990); *see also Permenter v. Crown Cork & Seal Co.*, 38 F. Supp. 2d 372, 379 n. 10 (E. D. Pa. 1999) *aff'd*, 210 F.3d 358 (3d Cir. 2000).

C.    <u>Fraudulent Inducement and Misrepresentation</u>

Plaintiffs have asserted claims for both fraudulent inducement to enter an employment contract and intentional misrepresentation. Plaintiffs contend that during discussions leading to Hetrick's employment, Advance intentionally failed to inform him of certain sales requirements or of restrictions regarding his dealings with former commercial customers. Plaintiffs further contend that Hetrick was induced to close his business and accept employment with Advance based upon these misrepresentations. Both claims require a showing of fraud and will be analyzed together.

Under Pennsylvania law, in order to state a cause of action for fraud Plaintiffs must show the following: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. *See Delahanty v. First Penn. Bank*, 464 A.2d 1243, 1252 (Pa. Super. 1983); *New York State Elec. & Gas v. Westinghouse*, 564 A.2d 919, 927 (Pa. Super. 1989). A cause of action for intentional

-8-

non-disclosure has the same elements except an intentional concealment calculated to deceive must be shown instead of an affirmative misrepresentation. *Gibbs v. Ernst*, 647 A.2d 882, 889 n. 12 (Pa. 1994); *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 612 n. 6 (3d Cir. 1995). Further, Plaintiffs have the burden of proving fraud by "clear, precise, and convincing" evidence. *Delahanty v. First Penn. Bank*, 464 A.2d at 1252-53 (citations omitted). Under *Anderson v. Liberty Lobby, Inc., supra.,* a summary judgment determination must be made in light of the evidentiary standard to be applied at trial. *Id.* at 252. Therefore, to withstand Defendant's motion for summary judgment, there must be sufficient evidence for a reasonable jury to find for Plaintiffs, by a clear, precise and convincing standard, on each of the elements of fraudulent inducement or fraudulent misrepresentation.

Although the above elements set forth the general contours of a cause of action in fraud, "it is axiomatic . . . that silence cannot amount to fraud in the absence of a duty to speak." *Sunquest Info. Sys. v. Dean Witter Reynolds, Inc.*, 40 F. Supp.2d 644, 656 (W.D. Pa. 1999); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611-612 (3d Cir. 1995); *Drapeau v. Joy Tech., Inc.*, 670 A.2d 165, 171 (Pa. Super. 1996). This duty does not normally arise unless there is a confidential or fiduciary relationship between the parties[4]. *See Federal Land Bank v. Fetner*, 269 Pa. Super. 455, 410 A.2d 344 (Pa. Super. Ct. 1979); *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463 (M.D. Pa. 1985)). A typical business relationship does not form the basis for such a relationship unless "one party surrenders substantial control over some portion of his affairs to the other." *Drapeau*, 670 A.2d at 172 (citing *In re Scott's Estate*, 455 Pa. 429, 316 A.2d 883 (Pa. 1974)).

Plaintiffs' do not argue that there was a fiduciary or confidential relationship between the parties, but instead contend that such a duty requirement does not apply when an employer

---

[4]     An employer-employee relationship does not, in and of itself, give rise to a fiduciary relationship from which a duty to disclose could be derived. *Vargas v. Esquire*, 166 F.2d 651 (7th Cir. 1948); *Hurd v. Illinois Bell Telephone Company*, 136 F. Supp. 125 (N. D. Ill. 1955), *aff'd* 234 F.2d 942 (7th Cir.), *cert. denied sub nom. Seybold v. Western Electric Co.*, 352 U.S. 918 (1956).

conceals material facts while recruiting an employee.  As authority, Plaintiffs cite *Lokay v. Lehigh Valley Cooperative Farmers, Inc.*, 492 A.2d 405, 408-410 (Pa. Super. 1985).  In *Lokay*, a corporation's chief operating officer persuaded the plaintiff employee to leave his previous employment to join the corporation and sent copies of financial reports that misrepresented the corporation's financial position.  When a new operating officer terminated the employee because of the corporation's poor financial health, the employee brought action for breach of contract and fraudulent misrepresentation.  The Superior Court refused to overturn the jury's finding of fraudulent misrepresentation by the corporation.  Nowhere in the opinion, however, does the court discuss the principle that silence cannot amount to fraud in the absence of a duty.  Moreover, in *Lokay*, there was an affirmative fraudulent misrepresentation.  Here, Plaintiffs contend that Advance failed to inform Hetrick of the required sales quota of $4000.00 per week and failed to inform him of Advance's level of commercial sales at that relevant time.

Pennsylvania's fraudulent concealment law is based upon Section 551 of the Restatement (Second) of Torts[5].  Numerous intermediate appellate courts in Pennsylvania have followed the

---

[5]     Section 551 of the Restatement (Second) of Torts states:

(1)  One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2)  One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a)  matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

> (b)  matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

> (c)  subsequently acquired information that he knows will make

principles in the Restatement, that to be liable for material nondisclosures, a party must have a duty to speak. In *Smith v. Renaut*, 564 A.2d 188 (Pa. Super. 1989), the Pennsylvania Superior Court began its analysis by noting that "fraud consists in anything calculated to deceive, whether . . . it be . . . by speech or silence. . . . It is any artifice by which a person is deceived to his disadvantage." *Smith v. Renaut*, 564 A.2d at 192 (quoting *McClellan Estate*, 375 A.2d 595 (Pa. 1950)). The court further stated that "while a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak." *Id.* Moreover, *In Estate of Evasew v. Evasew*, 584 A.2d 910 (Pa. 1990), the Supreme Court of Pennsylvania explicitly approved the duty to speak prerequisite, holding that "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information." 584 A.2d at 913 (relying on *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463 (M.D. Pa. 1985)).

Therefore, without evidence of an intentional concealment by Advance of facts deemed material to Hetrick's decision, Plaintiffs must show that Advance had an independent duty to disclose such information. Pennsylvania courts determine whether there is a duty to speak based almost exclusively on the nature of the transaction between the parties and the scope of one party's reliance on the representations of the other. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d at 612. The duty has been extended to situations involving latent defects in the sales of real estate, such as a termite infestation where the buyer is at the whim of the seller to disclose the matter because it is not discoverable by other reasonable means. *Id.* Beyond this,

---

untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

-11-

and as stated above, the duty does not ordinarily arise in a transaction unless there is a confidential or fiduciary relationship between the parties. *Sunquest Information Systems*, 40 F. Supp.2d at 656 (citing *Drapeau v. Joy Tech., Inc.*, 670 A.2d at 171); *see also Federal Land Bank and Fetner*, 410 A.2d 344 (Pa. Super. 1979); *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463 (M.D. Pa. 1985). Such a relationship does not arise in a typical transactional setting unless "one party surrenders substantial control over some portion of its affairs to the other." *Sunquest Information Systems*, 40 F. Supp.2d at 656 (quoting *Drapeau*, 670 A.2d at 172)). Similarly, the duty does not arise where the parties have or can be assumed to have equal knowledge to the information available. *Duquesne Light Co.*, 66 F.3d at 612; *Sunquest Information Systems*, 40 F. Supp.2d at 657.

Though the Plaintiffs contend that Advance concealed material facts, *i.e.*, the requirement that Hetrick increase commercial sales to $4,000.00 per week, there is no evidence that there was active or passive concealment. Hetrick was aware he was being hired to increase commercial sales. Hetrick openly informed Advance that his store did in excess of $7,000 per week, and promised to bring his customers to Advance. *See* Sinisi Deposition, pp. 25-26; Hetrick Deposition, p. 243. If Hetrick had any concern about Advance's expectations of his performance, he should have asked. Hetrick operated his own auto parts business for twenty-six (26) years. He knew the Punxsutawney market, and he was in the best position to protect himself. It appears his two main concerns in accepting the position with Advance were salary and location. If there were other aspects of the position about which he was concerned, he should have asked.

Plaintiffs submit the affidavit of John Steiner to create a material issue of fact with regard to their fraudulent concealment claims. Steiner's affidavit, however, falls woefully shy of proving anything with regard to Plaintiffs' fraud claims. Though he comments on certain conversations with Sinisi, the conversations do not show that Advance affirmatively concealed material facts. Moreover, his contention that the $4,000.00 per week quota was unreasonable has no basis in fact. Hetrick was hired to increase commercial sales. He informed Advance that his sales were in excess of the $4,000.00 per week and that he would bring his customers over to

Advance.  MOreover, once Hetrick was hired, Advance's commercial sales went down.  Even when faced with the quota, Hetrick made no improvement to Advance's commercial.  Plaintiffs have utterly failed to set forth specific facts showing that there is a material issue regarding fraud by Advance.  Therefore, Plaintiffs' claims based upon fraud must be dismissed.

       D.    <u>Punitive Damages</u>

Pennsylvania has adopted the rule on punitive damages set forth in Section 908 of the Restatement of Torts which permits punitive damages for conduct which is "outrageous".  *Medvecz v. Choi*, 569 F.2d 1221 (3rd Cir. 1977); *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963);*Hoffman v. Memorial Osteopathic Hospital*, 492 A.2d 1382, 1386 (Pa. Super. 1985); *see also* RESTATEMENT OF TORTS § 908.  Because this Court has dismissed Plaintiffs' substantive claims, the claim for punitive damages fails as well.


**V.**    **CONCLUSION**

Based on the above, this Court finds that Plaintiffs have failed to set forth specific facts that create a genuine issue of material fact regarding each of the claims set forth in their amended complaint.  Therefore, Defendant, Advance Auto Parts, is entitled to judgment as a matter of law.  The motion for summary judgment shall be granted.  An appropriate order will follow.


                             _DS Cercone_____
                            David Stewart Cercone
                            United States District Judge


cc:    Nicholas F. Lorenzo, Jr., Esq.
       Lorenzo & Kulakowski
       410 West Mahoning Street
       Punxsutawney, PA 15767

       Jeffrey A. Van Doren, Esq.
       Flippin, Densmore, Morse & Jessee
       1800 First Union Tower
       Drawer 1200
       Roanoke, VA 24006